## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Aloeng Kelly Vang,                          Case No. 17-cv-71 (JNE/TNL)

       Petitioner,

v.                                          **REPORT &**
                                            **RECOMMENDATION**
Tom Roy,
Minnesota Commissioner of Corrections,

       Respondent.

---

Benjamin J. Butler, Office of the Minnesota Appellate Public Defender, 540 Fairview Avenue North, Suite 300, St. Paul, MN 55104 (for Petitioner); and

Peter R. Marker, Ramsey County Attorney's Office, 345 Wabasha Street North, Suite 120, St. Paul, MN 55102-1657 (for Respondent).

---

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Petitioner Aloeng Kelly Vang's Petition for Relief From a Conviction or Sentence by a Person in State Custody ("Petition") (ECF No. 1) pursuant to 28 U.S.C. § 2254. Petitioner is represented by Assistant State Public Defender Benjamin J. Butler. Respondent Toy Roy is represented by Assistant Ramsey County Attorney Peter R. Marker. This action has been referred to the undersigned magistrate judge for a report and recommendation to the Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the

reasons set forth below, this Court recommends that the habeas petition be **DENIED** and

this action be **DISMISSED WITH PREJUDICE**.

## II. FACTUAL & PROCEDURAL BACKGROUND

### A. Underlying Criminal Proceedings

As stated by the Minnesota Supreme Court, "[t]he facts of . . . [Petitioner's] crime

are not in dispute." *State v. Vang*, 881 N.W.2d 551, 553 (Minn. 2016).

> On September 1, 2013, between 12:30 a.m. and 1:00 a.m.,
> Jeffrey Elling and his girlfriend, D.H., were crossing the
> street when [Petitioner] sped past them in his car. [Petitioner]
> parked his car in the driveway of his cousin, a neighbor of
> Elling's. Elling approached [Petitioner] and the two
> exchanged words. Elling pushed [Petitioner], who fell to the
> ground. Then Elling walked back to his house.
>
> [Petitioner] was angry and frustrated about the encounter. He
> left his cousin's house, drove home, and retrieved a firearm
> from his garage. [Petitioner] then returned to Elling's house,
> rang the doorbell, and hid behind a tree. As Elling opened the
> front door, [Petitioner] fired two shots, one of which struck
> Elling in the neck. [Petitioner] fled the scene while Elling
> bled to death. [Petitioner] later returned to the scene,
> identified himself, and was arrested.

*Id.* at 553-54. Two days later, the State filed a complaint charging Petitioner with one

count of second-degree intentional murder under Minn. Stat. § 609.19, subd. 1(1)

("caus[ing] the death of a human being with intent to effect the death of that person or

another, but without premeditation"). *Id.* at 554. Petitioner pleaded not guilty. *Id.*

After Petitioner entered his plea, Petitioner's trial counsel and prosecutors engaged

in plea negotiations to see if a resolution could be reached without going to trial. (Post-

Conviction Order at 2, ECF No. 1-2 at 6-11; *see* Aff. of Aloeng Kelly Vang ¶¶ 7-14, ECF

No. 1-2 at 31-34; Aff. of Evan Tsai ¶¶ 4-5, 7-10, ECF No. 1-2 at 37-38; Oct. 22, 2013 Ltr. at 1, ECF No. 1-2 at 41; Nov. 4, 2013, Ltr. at 1, ECF No. 1-2 at 42; Jan. 27, 2014 Ltr. at 1-2, ECF No. 1-2 at 43-44.[1]) *See Vang*, 881 N.W.2d at 554. In October, Petitioner offered to plead guilty to second-degree intentional murder in exchange for a sentence within the presumptive sentencing range. *Vang*, 881 N.W.2d at 554. (*See* Oct. 22, 2013 Ltr. at 1.) The offer was rejected. *Vang*, 881 N.W.2d at 554. (*See* Nov. 4 Ltr. at 1.) At some point during the negotiations, one of the prosecutors suggested that the matter could be resolved if Petitioner would be willing to plead guilty to the complaint as charged and be sentenced to the statutory maximum of 480 months, or 40 years. (Post-Conviction Order at 2; Tsai Aff. ¶ 4.) In early January 2014, Petitioner offered to plead guilty under these terms. (Post-Conviction Order at 2; Tsai Aff. ¶ 7; Vang Aff. ¶ 11.) *See Vang*, 881 N.W.2d at 554.

Prosecutors requested a chambers conference with the state district court, and one was held off the record on January 21. (Post-Conviction Order at 2.) *Vang*, 881 N.W.2d at 554. "During this conference, [the same prosecutor] indicated that the State would not accept the plea offer of [Petitioner] and that he was not authorized to provide notice to the defense regarding whether the State would be submitting . . . [the] matter to the grand jury or not." (Post-Conviction Order at 2; *see* Tsai Aff. ¶ 9.) *Accord Vang*, 881 N.W.2d at 554. "The prosecutor suggested that [Petitioner's trial counsel] attempt to convince

---

[1] In the future, it would be helpful to the Court if Petitioner's counsel would individually label the exhibits and include an exhibit list/index.

managing attorneys in the county attorney's office to accept [Petitioner's] most recent offer." *Vang*, 881 N.W.2d at 554. (*See* Post-Conviction Order at 2-3; Tsai Aff. ¶ 9.)

At or around this time, Petitioner's trial counsel informed Petitioner "that the prosecutor no longer wanted [him] to plead guilty to the charged offense even if [he] received the statutory maximum sentence." (Vang Aff. ¶ 12.) Petitioner "emphasized to [his trial-counsel] how much [he] wanted to plead guilty to the charged offense" and "asked . . . if [he] could enter a plea without the prosecutor's agreement." (Vang Aff. ¶ 13.) Petitioner's trial counsel informed him "that they would try to convince the prosecutor or his supervisor to accept a guilty plea to the charged offense." (Vang Aff. ¶ 14.) On January 27, Petitioner's trial counsel sent a letter to the director of the criminal division, requesting consideration of "an alternative resolution to [Petitioner's] case which would avoid a sentence of life without the possibility of release." (Jan. 27, 2014 Ltr. at 1; *see* Post-Conviction Order at 3.) *Accord Vang*, 881 N.W.2d at 554. "There was no response." *Vang*, 881 N.W.2d at 554. (*Accord* Post-Conviction Order at 3.)

At some point, the prosecutors knew that the county attorney had decided "to pursue a grand jury indictment of first-degree premediated murder." (Post-Conviction Order at 3; *see* Aff. of Adam E. Petras ¶ 5, ECF No. 1-2 at 39-40.) "On February 12, . . . a grand jury indicted [Petitioner] on charges of first-degree premeditated murder and second-degree intentional murder." *Vang*, 881 N.W.2d at 554; *see* Minn. R. Crim. P. 17.01, subd. 1 ("An offense punishable by life imprisonment must be prosecuted by indictment."); *see also* Minn. Stat. § 609.185(a) (providing life imprisonment for first-degree murder).

Petitioner proceeded to a bench trial.  *Vang*, 881 N.W.2d at 554.  Petitioner was convicted of both first-degree premeditated murder and second-degree intentional murder.  *Id.*  "As required by statute, [Petitioner] was sentenced to life imprisonment without the possibility of release on the first-degree count."  *Id.*

## B.  Post-Conviction & Appellate Proceedings

Petitioner's direct appeal to the Minnesota Supreme Court was stayed in order to allow him to pursue post-conviction relief in the state district court.  *Id.*  Petitioner timely filed a petition for post-conviction relief, asserting, in relevant part, that trial counsel was ineffective "because counsel did not schedule a plea hearing directly with the court, pursuant to Minn. R. Crim. P. 14.03(d), in order to allow [Petitioner] to plead guilty to second-degree intentional murder when it was the only charge pending against him."  *Id.* (*See* Post-Conviction Order at 4; *see generally* Pet'r's Pet. for Post-Conviction Relief & Mem. in Supp. of Pet. for Post-Conviction Relief, Ex. 3, ECF No. 9-1.)  Petitioner argued that, "had a plea hearing been scheduled, he would have been able to enter a guilty plea in January 2014 and he would not have been indicted or convicted for premeditated murder."  (Post-Conviction Order at 4.)  *See Vang*, 881 N.W.2d at 554.

"The State countered that the prosecutors would have blocked any guilty plea by filing a complaint charging [Petitioner] with first-degree murder, *see* Minn. R. Crim. P. 17.01, subd. 1, or by dismissing the second-degree intentional murder complaint and recharging."  *Vang*, 881 N.W.2d at 554-55.  (*See generally* Resp. to Pet. for Post-Conviction Relief, Ex. 4, ECF No. 9-1.)  The State also acknowledged that, "to avoid the 14-day time limitation in Minn. R. Crim. P. 8.02, the Ramsey County Attorney's Office

did not formally notify [P]etitioner and his [trial] counsel (by filing a complaint or otherwise) of its intention to present first-degree murder charges to a grand jury." *Vang*, 881 N.W.2d at 555 (quotation omitted). (*See* Resp. to Pet. for Post-Conviction Relief at 2.)

The state district court denied summarily the petition for post-conviction relief, concluding that trial counsel's performance did not fall below an objective standard of reasonableness and there was no indication that, but for trial counsel's alleged errors, the outcome of Petitioner's case would have been different. *Vang*, 881 N.W.2d at 555. (*See* Post-Conviction Order at 4-6.) The state district court found that, if Petitioner's trial counsel "had attempted to schedule a plea hearing, the State would have blocked the plea by either dismissing the second-degree intentional murder charge or by filing a complaint for first-degree premeditated murder." *Vang*, 881 N.W.2d at 555. (*See* Post-Conviction Order at 4; Petras Aff. ¶ 6.)

In finding that trial counsel's performance did not fall below an objective standard of reasonableness, the state district court observed:

> Experienced criminal defense attorneys know that scheduling a plea hearing when the state is not in agreement with the plea, would cause the state to take measures to block the plea, such as filing a first-degree murder complaint. If Petitioner's attorneys had tried to force the plea hearing, it is likely Petitioner's attorneys would have lost any progress they had made in attempting to secure a more favorable deal for their client. In fact, after the chambers conference occurred, Petitioner's attorneys wrote a well thought[-]out letter to [the criminal division director] . . . , asking for a resolution that prevented Petitioner from serving a life sentence. . . . Petitioner's defense attorneys did all that they could to convince the prosecutors that a guilty plea to second-degree

intentional murder was a just resolution.  Attempting to enter a guilty plea against the prosecutor's wishes would have only made the situation more contentious decreasing the likelihood of being able to negotiate a plea deal.  Petitioner's defense attorneys made legally sound decisions that any reasonable defense attorney would make to prolong the negotiation process to a favorable conclusion.

(Post-Conviction Order at 5.)

Similarly, in finding that there was no indication that, but for trial counsel's alleged errors, the outcome of Petitioner's case would have been different, the state district court stated:

It is clear based upon all the information available to the court that the prosecutors had lawful means to block Petitioner's guilty plea to second-degree intentional murder and would have done so by dismissing the second-degree murder charge or by filing a complaint charging first-degree premeditated murder had Petitioner's attorneys scheduled a plea hearing.  Petitioner has not established that his attorneys could have done anything different to stop the State from charging Petitioner with first-degree murder.

(Post-Conviction Order at 5-6.)

On appeal, the Minnesota Supreme Court affirmed.  *Vang*, 881 N.W.2d at 557.

The Minnesota Supreme Court reasoned as follows:

[Petitioner] argues that counsel's performance became deficient when, after it became clear that the State would not agree to a straight plea to second-degree murder, his counsel did not schedule a guilty plea hearing to enter that plea.  This claim fails on the second prong of *Strickland*.  [Petitioner] has not proven that he was prejudiced; he has not shown that, but for the alleged error, the result would have been any different.  The postconviction court is correct that the State could have dismissed the complaint without the court's approval even if [Petitioner] had procured a plea hearing.  *See* Minn. R. Crim. P. 30.01.  The State then could have convened a grand jury,

> *see* Minn. R. Crim. P. 18.01, subd. 1, to seek an indictment
> for first-degree premeditated murder. Therefore, the
> postconviction court did not err in dismissing this claim
> without an evidentiary hearing.

*Id.* at 557-58.

### C. Federal Habeas Proceedings

On January 6, 2017, Petitioner filed the instant habeas petition pursuant to 28 U.S.C. § 2254. (*See generally* Pet.) Petitioner has identified one ground for relief: ineffective assistance of trial counsel under the Sixth Amendment. (Pet. at 6.) Petitioner claims that trial counsel's performance was constitutionally deficient because trial counsel did not execute Petitioner's directive to arrange for him to plead guilty to the charged offense of second-degree intentional murder and he was prejudiced because, but for trial counsel's deficient performance, the result of the proceeding would have been different.

### III. ANALYSIS

### A.    Exhaustion of State Remedies

A state prisoner may seek a writ of habeas corpus in federal court on the ground that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). But, in order for such relief to be granted, the state prisoner first must show that he "has exhausted the remedies available" in the state courts. *Id.* § 2254(b)(1)(A). To satisfy this exhaustion requirement, the state prisoner "must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review)" in a manner that alerts the court to the claim's federal nature and gives "the State the opportunity to pass upon and correct

alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations and quotations omitted); *accord O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). "A petitioner must present *both* the *factual and legal* premises of his claims to the state courts in order to exhaust the claims properly." *Dansby v. Hobbs*, 766 F.3d 809, 823 (8th Cir. 2014) (emphasis in original) (quotation omitted); *accord Anderson v. Groose*, 106 F.3d 242, 245 (8th Cir. 1997). "The habeas claim need not be an exact duplicate of the one raised in the state court proceedings, but the petition must present the same legal and factual bases to the federal courts that were presented to the state courts." *Ward v. Norris*, 577 F.3d 925, 935 (8th Cir. 2009) (citation omitted).

Respondent argues that Petitioner's ineffective-assistance-of-trial-counsel claim is procedurally defaulted because the federal habeas claim is based on a different legal theory than Petitioner presented to the state courts and this theory was available to him at all times. (Resp.'s Resp. at 11-12, ECF No. 8.) Respondent describes Petitioner as presenting two different "prejudice arguments." (*See* Resp.'s Resp. at 11.) As best as this Court can tell, Respondent contends that Petitioner argued to the state courts that he was prejudiced by trial counsel's alleged deficient performance in failing to obtain a plea hearing because, but for trial counsel's alleged deficient performance, he would have been able to plead guilty to the complaint and the results of his criminal proceeding would have been different whereas, in his habeas petition to this Court, Petitioner argues

that the Minnesota Supreme Court unreasonably applied clearly established federal law in evaluating whether Petitioner was prejudiced by trial counsel's alleged deficient performance.

Petitioner responds that his claim has consistently been that trial counsel's "performance was deficient because they did not honor his instruction to plead guilty to the charged offense, and that he was prejudiced by that deficient performance because, but for the deficient performance, the result of the proceeding would have been different." (Pet'r's Reply at 2, ECF No. 10.) Petitioner states that, to the extent, his habeas petition focuses on "the Minnesota Supreme Court's holding that the State would have dismissed the charge had he tried to plead guilty, he does so because of how the Minnesota Supreme Court resolved his Federal claim." (Pet.'s Reply at 2.) Petitioner asserts that he is only required to present his claim fairly to the state courts, not anticipate or refute how such courts might rule upon the claim.

With respect to the factual-premises requirement, "the federal [habeas] claim cannot contain significant additional facts such that the claim was not fairly presented to the state court, but closely related claims containing an arguable factual commonality may be reviewed." *Anderson*, 106 F.3d at 245 (quotation omitted); *accord Ward*, 577 F.3d at 935. "The Eighth Circuit has stated that a petitioner cannot raise one type of ineffective-assistance-of-counsel claim in state court and a different ineffective-assistance-of-counsel claim in a federal habeas petition." *Burks v. Minnesota*, No. 13-cv-823 (JRT/TNL), 2014 WL 7399117, at *8 (D. Minn. Dec. 29, 2014); *see also Wyldes v. Hundley*, 69 F.3d 247, 253 (8th Cir. 1995) ("[W]e require habeas petitioners to present to

the state courts the same specific claims of ineffective assistance made out in the habeas petition.") (quotation omitted).

Petitioner's ineffective-assistance-of-trial-counsel claim has consistently been based on trial counsel's failure to obtain a plea hearing in order to effectuate Petitioner's desire to plead guilty to the complaint and the charge of second-degree intentional murder contained therein. (*See, e.g.*, Pet'r's Pet. for Post-Conviction Relief at 2-3; Pet'r's Mem. in Supp. of Pet. for Post-Conviction Relief at 4-5; Appellant's Br. at 13, Ex. 8, ECF No. 9-2.) Petitioner has not alleged in his habeas petition that trial counsel's performance was constitutionally deficient on some other grounds not identified in the state proceedings. *Cf. Burks*, 2014 WL 7399117, at *8-9 (federal habeas claim for ineffective assistance of counsel procedurally barred when claim identified different grounds for counsel's alleged deficient performance than presented to the state courts). The factual bases underlying Petitioner's ineffective-assistance-of-trial-counsel claim have not varied between the state proceedings and this federal habeas proceeding.

Turning to the legal-premises requirement, "this requirement is satisfied if the petitioner's argument to the state court refers to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *Dansby*, 766 F.3d at 823 (quotation omitted); *accord Nash v. Russell*, 807 F.3d 892, 898 (8th Cir. 2015); *Murphy v. King*, 652 F.3d 845, 849 (8th Cir. 2011). When seeking post-conviction relief in the state district court and on appeal to the Minnesota Supreme Court, Petitioner specifically referred to, among numerous other authorities, his right to effective assistance of counsel under the Sixth

Amendment to the United States Constitution and the United States Supreme Court's decisions in *Strickland v. Washington*, 466 U.S. 668 (1984), and *Hinton v. Alabama*, 134 S. Ct. 1081 (2014), a case considering whether a defense attorney's performance was unreasonable under *Strickland*. (*See, e.g.*, Pet'r's Mem. in Supp. of Pet. for Post-Conviction Relief at 5, 7-8, 11; Appellant's Br. at 13, 16, 19.) The Sixth Amendment and *Strickland* were among the authorities cited by the state district court in analyzing his petition for post-conviction relief. (Post-Conviction Order at 3, 4.) The Minnesota Supreme Court analyzed Petitioner's ineffective-assistance-of-trial-counsel claim under *Strickland*. *Vang*, 881 N.W.2d at 557. ("This claim fails on the second prong of *Strickland*."). Petitioner now relies on the same federal constitutional bases to support his ineffective-assistance-of-trial-counsel claim in seeking federal habeas relief. (*See, e.g.*, Pet. at 6; Mem. in Supp. at 11-12, 15-16, 19-21.)

Respondent contends that Petitioner's federal habeas arguments concerning the application of these federal constitutional authorities to his ineffective-assistance-of-trial-counsel claim amount to a "wholly different legal theory of prejudice than the theory [Petitioner] argued in state court." (Resp.'s Resp. at 11.) The Court disagrees. Rather than amounting to a different legal basis to support his ineffective-assistance-of-trial-counsel claim, Petitioner's federal habeas arguments are reflective of the standard set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), namely, that federal habeas review is limited to adjudications that "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In sum, the factual and legal bases Petitioner relies on for his federal habeas claim are the same as those he relied upon in presenting his ineffective-assistance-of-trial-counsel claim to the state courts. Because Petitioner fairly presented his ineffective-assistance-of-trial-counsel claim in a manner that alerted the state courts to the federal nature of the claim, the Court concludes that Petitioner has properly exhausted his ineffective-assistance-of-trial-counsel claim.

### B.      Ineffective Assistance of Trial Counsel

As stated above, Petitioner is not entitled to federal habeas relief under the AEDPA unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see, e.g.*, *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009); *Williams v. Roper*, 695 F.3d 825, 830 (8th Cir. 2012). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court unreasonably applies clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*; *see Lafler v. Cooper*, 566 U.S. 156, 173 (2012) ("A decision is contrary to clearly established law if the state court

applies a rule that contradicts the government law set forth in Supreme Court cases.") (quotation omitted). When deciding whether a state court decision unreasonably applied clearly established federal law, a federal habeas court should ask whether the state court's application was "objectively unreasonable." *Williams*, 529 U.S. at 409. In other words, it is not enough that a "state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

"The Sixth Amendment, applicable to the States by the terms of the Fourteenth Amendment, provides that the accused shall have the assistance of counsel in all criminal prosecutions. The right to counsel is the right to effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 138 (2012) (citing *Strickland*, 466 U.S. at 686). This right extends to all "critical stages" of criminal proceedings, including the entry of a guilty plea. *Id.* at 140; *see Lafler*, 566 U.S. at 162. "[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Lafler*, 566 U.S. at 162-63 (quotation omitted). "To establish a constitutional violation, a petitioner must show both that counsel's performance was deficient and that the deficiency prejudiced his defense." *Barnes v. Hammer*, 765 F.3d 810, 813-14 (8th Cir. 2014) (citing *Strickland*, 466 U.S. at 687).

"AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams*, 695 F.3d at 831 (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)); *see also Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016); *Knowles*, 556 U.S. at 123; *Barnes*, 765 F.3d at 813. "There is a strong presumption that counsel has rendered adequate

assistance and made all significant decisions for tactical reasons rather than through neglect." *Barnes*, 765 F.3d at 814; *see also Woods*, 136 S. Ct. at 1152-53. "Where a state court concludes that there was no ineffective assistance under this 'highly deferential' standard, a federal court then must review counsel's performance under the 'deferential lens of § 2254(d).'" *Barnes*, 765 F.3d at 814 (quoting *Cullen*, 563 U.S. at 190). "Under § 2254(d), the 'pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.'" *Taylor v. Kelley*, 825 F.3d 466, 470 (8th Cir. 2016) (quoting *Harrington*, 562 U.S. at 101); *see Williams*, 695 F.3d at 831-32 ("[T]he proper question is whether there is any reasonable argument that the state court's judgment is consistent with *Strickland*.") (quotation omitted).

The Minnesota Supreme Court resolved Petitioner's ineffective-assistance-of-trial-counsel claim on *Strickland*'s prejudice prong. *Vang*, 881 N.W.2d at 557. "Because both prongs must be met for the petitioner to succeed 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.'" *Taylor*, 825 F.3d at 470 (quoting *Strickland*, 466 U.S. at 697). "To establish *Strickland* prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 566 U.S. at 163 (quotation omitted). "To satisfy *Strickland*, the likelihood of a different result must be 'substantial, not just conceivable.'" *Williams*, 695 F.3d at 831 (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)); *see Taylor*, 825 F.3d at 470 ("For there to be a reasonable probability that the result would have been different, it is not enough to show that the

errors had some conceivable effect on the outcome of the proceeding.") (quotation omitted). "If the state court reasonably could have concluded that the petitioner was not prejudiced by counsel's actions, then federal review under AEDPA is at an end." *Williams*, 695 F.3d at 832 (quotation omitted).

In the plea context, "a defendant must show the outcome of the plea process would have been different with competent advice" in order to demonstrate prejudice. *Lafler*, 566 U.S. at 163; *accord Barnes*, 765 F.3d at 814. "[I]t is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 566 U.S. at 147. The Minnesota Supreme Court concluded that Petitioner had not met *Strickland*'s prejudice prong because he had not shown that the result would have been any different if trial counsel had scheduled a guilty plea hearing because "the State could have dismissed the complaint without the [state district] court's approval even if [Petitioner] had procured a plea hearing" and "then could have convened a grand jury to seek an indictment for first-degree premeditated murder." *Vang*, 881 N.W.2d at 557 (citation and footnote omitted).

Petitioner argues that, in reaching this conclusion, the Minnesota Supreme Court unreasonably applied *Strickland* because the appellate court's analysis was not confined to the effect of trial counsel's performance on the criminal proceeding at hand, but impermissibly considered "the possible impact of . . . [trial counsel's alleged] deficient performance on a hypothetical, future proceeding: a subsequent case, charging first-

degree murder, initiated by grand-jury indictment." (Pet'r's Mem. in Supp. at 15.)

According to Petitioner,

> the state court presumed that, had [trial] counsel acted
> reasonably and arranged for [P]etitioner to plead guilty, the
> State would have dismissed the complaint, ending "the
> proceeding" altogether. A reasonable examination of the
> impact of the deficient performance would have stopped right
> there, because dismissal of the charging document is the end
> of the "proceeding" or the "plea process."

(Pet'r's Mem. in Supp. at 15.) Respondent counters that Petitioner advances a narrow

construction of "proceeding" that has not been adopted by the United States Supreme

Court, and the Minnesota Supreme Court's analysis is consistent with the United States

Supreme Court's holding in *Frye*.

The United States Supreme Court has "cautioned that the prejudice inquiry is not

meant to be applied in a 'mechanical' fashion." *Weaver v. Massachusetts*, 137 S. Ct.

1899, 1911 (2017) (quoting *Strickland*, 466 U.S. at 696). And it is not necessary to the

resolution of the instant petition to define precisely what constitutes the "proceeding."

Distilled to its essence, Petitioner's claim is that he was prejudiced by trial counsel's

failure to schedule a plea hearing so that he could plead guilty to the complaint.

In *Frye*, the United States Supreme Court articulated an analytical framework for

addressing *Strickland*'s prejudice prong when a defendant claims that he or she would

have pleaded guilty to a plea offer if he or she had known about the offer. The prosecutor

sent defense counsel a letter offering two plea bargains, one of which was to reduce the

charge, a felony, to a misdemeanor and recommend a 90-day sentence if the defendant

pleaded guilty. *Frye*, 566 U.S. at 138-39. The letter set forth a deadline by which the

offers would expire.  *Id.* at 139.  Defense counsel did not advise the defendant of the offers and they expired.  *Id.*  The defendant ultimately ended up pleading guilty to the felony without any sort of plea agreement and was sentenced to three years in prison.  *Id.* Asserting ineffective assistance of counsel, the defendant maintained that, had defense counsel informed him of the prosecutor's offer to reduce the charge to a misdemeanor, he would have accepted the offer.  *Id.*

"The [defendant's] challenge [wa]s not to the advice pertaining to the plea that was accepted but rather to the course of legal representation that preceded it with respect to other potential pleas and plea offers."  *Frye*, 566 U.S. at 141-42.  Not only did the defendant need to demonstrate that he or she would have accepted the plea offer, the defendant also had to "demonstrate a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it." *Id.* at 147.  Accordingly, the inquiry of whether the defendant had been prejudiced by not having an opportunity to plead guilty required consideration of whether there was a reasonable probability that the prosecutor would have gone along with the plea.  *Id.* at 147-50.

While *Frye*'s factual premises—defense counsel's failure to inform the defendant of the plea offers extended by the prosecutor—differ from the present case, the ultimate analysis of prejudice under *Strickland* is the same: would the State have gone along with the plea.  In *Frye*, the United States Supreme Court observed:

> It can be assumed that in most jurisdictions prosecutors and judges are familiar with the boundaries of acceptable plea bargains and sentences.  So in most instances it should not be

> difficult to make an objective assessment as to whether or not
> a particular fact or intervening circumstance would suffice, in
> the normal course, to cause prosecutorial withdrawal or
> judicial nonapproval of a plea bargain. The determination
> that there is or is not a reasonable probability that the
> outcome of the proceeding would have been different absent
> counsel's errors can be conducted within that framework.

556 U.S. at 149. As applicable to the instant case, Petitioner needed to show that there

was a reasonable probability that the guilty plea would have been entered had trial

counsel scheduled the plea hearing in order to satisfy *Strickland*'s prejudice prong. *See*

*Frye*, 566 U.S. at 147.

The Minnesota Supreme Court determined that, if Petitioner had attempted to

plead guilty to the complaint, the State would have dismissed the complaint, thus

*preventing* Petitioner from pleading guilty to second-degree intentional murder. *Vang*,

881 N.W.2d at 557; *see* Minn. R. Crim. P. 30.01 ("The prosecutor may dismiss a

complaint or tab charge without the court's approval . . . ."); *State v. Blount*, No. A08-

1259, 2009 WL 511898, at *4 (Minn. Ct. App. Mar. 3, 2009) ("The plain language of

Rule 30.01 allows the state to dismiss a complaint without leave of court."). This factual

determination is presumed correct, and there is nothing in the record suggesting

otherwise. *See* 28 U.S.C. § 2254(e); *Barnes*, 765 F.3d at 814. By considering whether a

plea to the second-degree intentional murder charge in the complaint would have been

successful had Petitioner attempted to plead guilty, the Minnesota Supreme Court

reasonably applied *Strickland* and its progeny. It was not unreasonable for the Minnesota

Supreme Court to conclude that Petitioner had not shown the required prejudice under

*Strickland* when any attempt by Petitioner to plead guilty to the complaint would not

have been consummated. *See Frye*, 566 U.S. at 151 ("If, as the Missouri court stated here, the prosecutor could have canceled the plea agreement, and if Frye fails to show a reasonable probability the prosecutor would have adhered to the agreement, there is no *Strickland* prejudice.").

In sum, having determined that Petitioner had not shown that there was a reasonable probability that he would have been able to plead guilty to the second-degree intentional murder charge in the complaint absent trial counsel's alleged deficient performance, the Minnesota Supreme Court reasonably applied the United States Supreme Court's holding in *Strickland* in reaching its conclusion that Petitioner was not prejudiced by trial counsel's alleged deficient performance. Because the Minnesota Supreme Court did not unreasonably apply clearly establish federal law, the Court recommends that the petition for a writ of habeas corpus be denied.

## IV. CERTIFICATE OF APPEALABILITY

A habeas corpus petitioner filing a petition under 28 U.S.C. § 2254 cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A Certificate of Appealability may be granted only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to do so, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, it is highly unlikely that any other court would treat Petitioner's current claim for relief differently than it is being treated here. Petitioner has not

identified (and this Court cannot discern) anything novel, noteworthy, or worrisome about this case that warrants appellate review. It is therefore recommended that Petitioner should not be granted a Certificate of Appealability in this matter.

## V. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for Relief From a Conviction or Sentence by a Person in State Custody (ECF No. 1) be **DENIED**.

2. This action be **DISMISSED WITH PREJUDICE**.

3. Petitioner should **NOT** be granted a Certificate of Appealability.


Date: September  11 , 2017                          *s/ Tony N. Leung*
                                                    Tony N. Leung
                                                    United States Magistrate Judge
                                                    District of Minnesota

                                                    *Vang v. Roy*
                                                    Case No. 17-cv-71 (JNE/TNL)



## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).